T.C. Memo. 2011-239

UNITED STATES TAX COURT

LOUIS GREENWALD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1577-09.                    Filed October 3, 2011.

R's disallowance of a short-term capital loss and
the capitalization of certain improvements made to P's
home before its sale caused deficiencies in Federal
income tax for P's 2005 tax year.  R also determined
that P was liable for an addition to tax pursuant to
sec. 6651(a)(1), I.R.C., and an accuracy-related
penalty pursuant to sec. 6662(a), I.R.C., for his 2005
tax year.

<u>Held</u>:  P is liable for a portion of the deficiency
consistent with the findings herein.

<u>Held</u>, <u>further</u>:  P is liable for the sec. 6651(a)(1),
I.R.C., addition to tax but is not liable for the sec.
6662(a), I.R.C., penalty.

<u>B. Paul Husband</u>, for petitioner.

<u>Linette B. Angelastro</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a petition
for redetermination of petitioner's liability for income tax, a
failure to file addition to tax, and an accuracy-related penalty
for the 2005 tax year.  After concessions the issues for decision
are:[1]

(1) Whether petitioner is entitled to a short-term capital
loss of $68,000;

(2) whether petitioner had $356,515 of additional capital
gain;

(3) whether petitioner is liable for the section 6651(a)
failure to file addition to tax;[2] and

(4) whether petitioner is liable for the section 6662(a)
accuracy-related penalty.

FINDINGS OF FACT

Some of the facts have been stipulated.  The stipulated
facts and the accompanying exhibits are incorporated by this

---

[1]Respondent concedes that petitioner is entitled to exclude
$250,000 of residential capital gain, and petitioner concedes
that he is not entitled to a net operating loss deduction of
$65,993.

[2]Unless otherwise indicated, section references are to the
Internal Revenue Code of 1986, as amended and in effect for the
tax year at issue.  All Rule references are to the Tax Court
Rules of Practice and Procedure.

reference. Petitioner resided in California at the time he filed his petition.

On June 29, 2001, petitioner, along with Daniel Lewis Kupper and George H. Manuras, entered into a "Fixed Rate Installment Note" (installment agreement) in the amount of $90,000, with JAV, Inc. (JAV), to purchase a skateboarding accessories business known as Skaters Paradise. Under the installment agreement, petitioner and the two other individuals were jointly and severally liable and were required to make installment payments (with interest) to JAV.

On or about April 11, 2002, petitioner purchased a residence at 610 Olive Road in Santa Barbara, California (Olive Road property), for $1,155,000. Petitioner also owned a second Santa Barbara residence at 590 Santa Rosa Lane (Santa Rosa property) which he leased out. Petitioner refinanced the Olive Road property on October 31, 2002. Petitioner again refinanced the Olive Road property in July of 2003, and in March or early April of 2004 petitioner used the Olive Road property as collateral for a loan with a private lender.

On December 20, 2002, JAV sued petitioner, Daniel Lewis Kupper, and George H. Manuras for nonpayment of the installment agreement. JAV obtained a judgment for $64,491.71 against petitioner on December 23, 2003, which was recorded on December

24, 2003.  Petitioner satisfied the judgment by again refinancing the Olive Road property on April 26, 2004.

After petitioner paid the judgment, he tried to keep the business going and sought repayment from Daniel Lewis Kupper and George H. Manuras.  He abandoned the venture in 2005.

Beginning in 2002 petitioner began making improvements on the Olive Road property.  His bookkeeper, Neala Robbins, recorded each expense.  Petitioner typically used his wholly owned corporation, BLSH, Inc., to pay the expenses for the improvements.  However, the contractors and other persons petitioner hired understood that they were doing business with petitioner personally and not his corporation.

By 2003 petitioner's wholly owned corporation was no longer actively in business.  Petitioner explained that he used the corporation's credit card and accounts "because it was convenient" and because "There was a credit card attached to it, and I had no income or no job, so I couldn't get a credit card, you know, and this one had [a] Louis Greenwald credit card * * * and I just assumed that it was okay to use it, and I did."  Petitioner claimed that the money in the corporation's account represented proceeds from refinancing the Olive Road property and the rental income from the Santa Rosa property.

Petitioner sold the Olive Road property on or about January 7, 2005, for $2,650,000.  On his 2005 tax return petitioner

reported the adjusted basis of the residence as $1,761,198 (including selling expenses).  He then subtracted this amount from the sale price to compute his taxable gain of $888,802. From the $888,802 he took the maximum principal residence exclusion of $250,000 and reported a capital gain from the sale of $638,802.

The accounting firm Fineman West & Co., LLP (Fineman West), prepared petitioner's 2005 tax return.  Fineman West had prepared petitioner's personal returns in the past; and when he was in business, they had prepared his business returns as well. Petitioner believed that Fineman West was a well-respected certified public accounting firm and "Trusted them implicitly". Petitioner believed that he provided all of the required information to Fineman West and that his return was prepared correctly.  Petitioner also explained that he was under the impression Fineman West automatically requested extensions of time to file for all of the returns they processed.

Jeffery Dunn, C.P.A., a senior tax manager at Fineman West, explained that it was the custom and practice of the firm for an accountant to prepare the return, a senior manager to review it, and then a tax partner to do a second and final review and sign off on it.  He also explained that it was Fineman West's practice to request extensions for its clients even if not requested by the client.

The filing date for petitioner's 2005 tax return was not extended.  Petitioner did not know why the firm did not automatically request an extension of time to file his return. Petitioner claims that as soon as he found out, he "got it fixed right away" and immediately had the firm file the return. Petitioner's 2005 and 2004 tax returns were filed on January 12, 2007.  Petitioner did not file a tax return for 2002 or 2003.

Respondent issued petitioner a notice of deficiency on October 27, 2008, determining a deficiency in income tax of $151,007, a section 6651(a) addition to tax of $45,112, and a section 6662(a) accuracy-related penalty of $30,201 for the 2005 tax year.  For that tax year respondent disallowed a claimed net operating loss (NOL) carryforward of $65,993, increased capital gains by $674,515, disallowed itemized deductions of $22,215, and determined alternative minimum tax of $29,906.[3]  Petitioner filed a timely petition with this Court on January 21, 2009, denying that he owed the deficiency, addition to tax, and penalty.  A trial was held on June 25, 2010, in Los Angeles, California.

---

[3]Although petitioner contested the disallowed itemized deductions and the alternative minimum tax in his petition, they were not mentioned at trial or on brief.  Therefore, to the extent these adjustments are not a mathematical correlative adjustment, we deem them conceded.  See Levin v. Commissioner, 87 T.C. 698, 722-723 (1986) (citing Rule 142(a) for the proposition that because "petitioners have made no argument with respect to * * * deductions claimed * * * [, they] are deemed to have conceded their nondeductibility"), affd. 832 F.2d 403 (7th Cir. 1987).

OPINION

I.   Short-Term Capital Loss of $68,000

Petitioner claimed a $68,000 short-term capital loss on Schedule D, Capital Gains and Losses, for "Investment JAV-KGM" on his 2005 tax return.[4]  Section 165(a) generally allows a deduction for losses sustained within the taxable year.  Section 165(c) limits losses that can be deducted by individual taxpayers, permitting a deduction only for losses incurred in a trade or business, in a profit-making activity (though not connected with a trade or business), or from a casualty or theft.

A loss is deductible only for the taxable year in which it is sustained.  Sec. 1.165-1(d)(1), Income Tax Regs.  In order to be "sustained", the loss must be "evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year."  Id.  At trial petitioner explained that a judgment was obtained against him because of a business installment agreement for which he was personally liable.  Petitioner explained that he claimed the capital loss after he was unable to collect from his business partners their shares of the judgment.

The record contains both the installment agreement and the judgment against petitioner.  It also contains the paperwork for

_____

[4]We note that the judgment entered against petitioner in relation to JAV was in the amount of $64,491.71.  The disparity is not explained by the record.

the refinancing petitioner used to pay off the judgment in 2004. We find credible petitioner's testimony that he continued to seek repayment from his partners during 2004 and part of 2005, after paying the judgment, and then abandoned the venture in 2005. Respondent has not satisfactorily rebutted this evidence; therefore petitioner is entitled to deduct the $68,000 capital loss.

## II. Capital Gain of $356,515

Respondent increased capital gain on the sale of the Olive Road property by $606,515. After respondent's concession that petitioner was entitled to the section 121 exclusion of $250,000, capital gain of $356,515 remains at issue. Petitioner claimed that he made total capital improvements of $387,734.60 to the Olive Road property. Most of the expenditures were paid through petitioner's defunct wholly owned corporation, and petitioner submitted receipts for improvements totaling only $171,301.79.

### A. Petitioner's Corporation

Respondent asserts that because petitioner's personal service corporation made the payments, petitioner is not entitled to add the amounts to the basis of the Olive Road property. We find this argument without merit. Petitioner credibly testified that because of credit card problems he merely used the corporation's accounts as his personal piggy bank clearing house agent, depositing his income from the rental and refinancing and

then using the accounts to pay for the capital improvements. In reality and in substance petitioner paid for the capital improvements to the Olive Road property, not his corporation.

B. Substantiation

Petitioner included receipts for only $171,301.79 of the $387,734.60 of claimed expenses.  Petitioner claims that he included only invoices that exceeded $2,000 because of an agreement with the examining agent.[5]

Petitioner urges the Court to apply the Cohan doctrine, under which the Court may allow a claimed expense even where the taxpayer is unable to fully substantiate it, provided the Court has an evidentiary basis for doing so.  Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  But see sec. 1.274-5T(a), Temporary

---

[5]We note that petitioner (or his counsel) should have been aware that this Court is not constrained by an alleged but unproven agreement made between a taxpayer and the examining agent.  Further, the Commissioner as sovereign is generally not bound by unauthorized acts of his revenue agents "even where a taxpayer may have relied to his detriment on that mistake." Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 60 (1995), affd. 140 F.3d 240 (4th Cir. 1998); see also Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 183 (1957); Hendrick v. Commissioner, 63 T.C. 395, 403 (1974).  Nor has petitioner established that respondent should be estopped here.  See Wilkins v. Commissioner, 120 T.C. 109, 112 (2003); Lignos v. United States, 439 F.2d 1365, 1368 (2d Cir. 1971).  The consideration of only items larger than $2,000 is also not a statistically valid sample of all expenses since items of less than $2,000 had no chance of being included. See generally Rev. Proc. 2011-42, 2011-37 I.R.B. 318.

Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). In these instances, the Court is permitted to approximate the allowable expense, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, supra at 544. However, the record must contain sufficient evidence to provide a basis upon which the estimate may be made and to permit us to conclude that those expenses were allowable, rather than personal expenses. Williams v. United States, supra at 560; Vanicek v. Commissioner, supra at 472-473.

Generally, we agree with petitioner that the application of the Cohan doctrine is appropriate in this instance. Although petitioner did not submit receipts for any expense of less than $2,000, he did submit a complete list of the expenses, including the date incurred, the payee, and the number of the check used to pay each expense. This factual background allows the Court to estimate the expenses; before the amounts disallowed by this opinion below, the Court estimates that petitioner had expenses of $387,734.60.

However, certain of the items on the list were checks written to "Cash" with a description of the purpose for which the cash was supposedly used. Petitioner did not discuss why he used checks written to cash without receipts to substantiate the expenses. We are unconvinced that petitioner used the entire amount of cash extracted from the account for those expenses.

Therefore, he is not entitled to add to basis unsubstantiated expenses paid with checks made out to cash totaling $7,661.15.[6]

C. <u>Expenses Eligible To Increase Basis</u>

Respondent argues that not all of the expenses listed in petitioner's exhibit are eligible to be added to the basis of the property as capital improvements and that certain expenses are noncapitalizable personal expenses. Capital expenditures include "Any amount paid out * * * for permanent improvements or betterments made to increase the value of any property or estate." Sec. 263(a)(1). In contrast personal expenses include those expenses which are "personal, living, or family expenses". Sec. 262(a).

While we agree that most of the expenses that petitioner included in the amount he capitalized for the house were properly capitalizable, certain expenses cannot be included. These are on petitioner's list of expenses under "Miscellaneous" beginning on February 10, 2002, and continuing to September 11, 2004, with the exception of two charges for storage and one for a pest report. Petitioner did not attempt to explain these expenses at trial;

---

[6]However, only $356,515 is at issue, and petitioner's list includes capital improvements which total $387,734.60. Therefore this finding may not have a practical effect on this case.

therefore he is not entitled to include expenses totaling $950.33.[7]

III. Section 6651(a) Failure to File Addition to Tax

Respondent bears the burden of production with regard to the section 6651(a)(1) addition to tax. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). To meet his burden, respondent must produce sufficient evidence that it is appropriate to impose the determined addition to tax. See Higbee v. Commissioner, supra at 446. However, respondent does not have to produce evidence of lack of reasonable cause, substantial authority, or lack of willful neglect. See id.

Section 6651(a)(1), in the case of a failure to file on time any return required under section 6011(a), imposes an addition to tax of 5 percent of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file, not to exceed 25 percent in the aggregate. Generally, "any person made liable for any tax * * * shall make a return or statement according to the forms and regulations prescribed by the Secretary." Sec. 6011(a). The addition to tax will not

_____

[7]Again, only $356,515 is at issue. Therefore this finding may not affect the outcome of this case. Respondent also argued that petitioner was not entitled to add to his basis the $7,879.35 of expenses related to staging the house for resale. Even if we disallow those expenses the amount of capital improvements allowed still exceeds the amount at issue.

apply if it is shown that such failure is due to reasonable cause and not due to willful neglect.

Petitioner's 2005 return was filed on January 12, 2007. Petitioner argues that "October 16 is an appropriate date from which to calculate the late filing penalty", because he believed that the accounting firm automatically requested an extension for him. Petitioner's argument is essentially that he had reasonable cause for filing his return late until October 15, 2006, but not anytime thereafter.

The failure to timely file a tax return is considered due to reasonable cause where a taxpayer is unable to file the return within the prescribed time despite exercising "'ordinary business care and prudence.'" Jackson v. Commissioner, 86 T.C. 492, 538 (1986) (quoting section 301.6651-1(c)(1), Proced. & Admin. Regs.), affd. 864 F.2d 1521 (10th Cir. 1989).

Generally, circumstances considered to constitute reasonable cause arise as a result of factors beyond a taxpayer's control and include situations such as unavoidable postal delays, timely filing of a return with the wrong office, death or serious illness of the taxpayer or a member of his immediate family, the taxpayer's unavoidable absence from the United States, destruction by casualty of the taxpayer's records or place of business, and reliance on the erroneous advice of an IRS office or employee. McMahan v. Commissioner, 114 F.3d 366, 369 (2d Cir.

1997), affg. T.C. Memo. 1995-547; see also Gagliardi v.
Commissioner, T.C. Memo. 2008-10.

Good faith reliance on professional advice may also provide
a basis for reasonable cause; however, it is not absolute.[8]
Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d
1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991); LaPlante v.
Commissioner, T.C. Memo. 2009-226.

There is insufficient evidence in the record for the Court
to determine that petitioner had reasonable cause for filing his
return late. His supposed reliance on the accounting firm to
request an extension for him does not constitute reasonable cause
since he knew that if he needed extra time, an extension request
was due. That duty to file may not be delegated to an attorney
or accountant. United States v. Boyle, 469 U.S. 241, 249-250
(1985). Petitioner did not testify as to when he gave his
information to the accounting firm to prepare his return, and the
witness from the accounting firm could not recall what was in
petitioner's file. Further, petitioner's 2004 return was filed
within a matter of days of his 2005 return. It does not appear

---

[8]We have held that for a taxpayer to rely reasonably upon
advice, "the taxpayer must prove * * * that the taxpayer meets
each requirement of the following three-prong test: (1) The
adviser was a competent professional who had sufficient expertise
to justify reliance, (2) the taxpayer provided necessary and
accurate information to the adviser, and (3) the taxpayer
actually relied in good faith on the adviser's judgment."
Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99
(2000), affd. 299 F.3d 221 (3d Cir. 2002).

that petitioner had reasonable cause for late filing, and thus he is liable for the section 6651(a) addition to tax.

## IV.  Section 6662(a) Accuracy-Related Penalty

Respondent also determined that petitioner is liable for a section 6662(a) accuracy-related penalty for his 2005 tax year. Pursuant to section 7491(c), the Commissioner also has the burden of production with respect to this penalty.  Subsection (a) of section 6662 imposes an accuracy-related penalty of 20 percent of any underpayment attributable to causes specified in subsection (b).  Respondent asserts two causes justifying the penalty:  A substantial understatement of income tax, subsec. (b)(2), and negligence, subsec. (b)(1).

There is a "substantial understatement" of income tax for an individual in any tax year where the amount of the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return for the tax year or (2) $5,000. Sec. 6662(d)(1)(A). "[N]egligence" is "any failure to make a reasonable attempt to comply with the provisions of this title" (i.e., the Internal Revenue Code).  Sec. 6662(c).  Under caselaw, "'Negligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'"  Freytag v. Commissioner, supra at 887 (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299).

There is an exception to the section 6662(a) penalty when a taxpayer can demonstrate:  (1) Reasonable cause for the underpayment and (2) that the taxpayer acted in good faith with respect to the underpayment.  Sec. 6664(c)(1).  Regulations promulgated under section 6664(c) provide that the determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances".  Sec. 1.6664-4(b)(1), Income Tax Regs.

Reliance on the advice of a tax professional may, but does not necessarily, establish reasonable cause and good faith for the purpose of avoiding a section 6662(a) penalty.  See United States v. Boyle, supra at 251.  Such reliance does not serve as an "absolute defense"; it is merely a "factor to be considered." Freytag v. Commissioner, supra at 888.

The caselaw sets forth three requirements for a taxpayer seeking to use reliance on a tax professional to avoid liability for a section 6662(a) penalty.  See Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002);[9] see also, e.g., Charlotte's Office Boutique, Inc. v. Commissioner, 425 F.3d 1203, 1212 & n.8 (9th Cir. 2005) (quoting with approval the above three-prong test), affg. 121 T.C. 89 (2003).

---

[9]See supra note 8.

We find that with respect to this penalty petitioner has met the three requirements for a finding of reasonable cause under <u>Neonatology Associates</u>.  Therefore petitioner is not liable for the section 6662(a) accuracy-related penalty.

V.   <u>Conclusion</u>

Petitioner is entitled to deduct the $68,000 capital loss. Petitioner is entitled to increase his basis with respect to the capital expenditures on the Olive Road property consistent with the findings of this opinion.  Finally, petitioner is liable for the section 6651(a) addition to tax, but on account of reasonable cause he is not liable for the section 6662(a) accuracy-related penalty.

The Court has considered all of petitioner's and respondent's contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.